Stein, J.
(dissenting in part). The majority and my dissenting colleague agree that the case should be decided as a matter of law; however, their opinions differ as to which of the parties should prevail. I take an alternative position and respectfully dissent, in part, because, in my view, triable questions of fact exist regarding whether defendants provided plaintiff with “proper protection” under Labor Law § 240 (1) and whether plaintiffs conduct was the sole proximate cause of his injuries.* Accordingly, I would hold that neither plaintiff nor defendants are entitled to summary judgment.
Labor Law § 240 (1) provides that
“[a] 11 contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
*436 When applicable, section 240 (1) imposes a nondelegable duty-on owners and contractors to furnish their employees with “proper protection.” Therefore, once a Labor Law § 240 (1) violation and proximate cause are established, a defendant cannot raise an injured employee’s contributory negligence as a defense (see Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 287 [2003]; see also Stolt v General Foods Corp., 81 NY2d 918, 920 [1993]; Bland v Manocherian, 66 NY2d 452, 461-462 [1985]; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 521 [1985]; Koenig v Patrick Constr. Corp., 298 NY 313, 317 [1948]).
Our Court has observed that “the Legislature’s intent [is] to . . . protect [ ] workers by placing ultimate responsibility for safety practices at building construction jobs ... on the owner and general contractor, instead of on workers, who are scarcely in a position to protect themselves from accident” (Zimmer, 65 NY2d at 520 [internal quotation marks and citations omitted]). That is, the legislature intended “to force owners and contractors to provide a safe workplace, under pain of damages” (Blake, 1 NY3d at 286). Thus, we have “long held that ‘this statute . . . undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed’ ” (id. at 292, quoting Quigley v Thatcher, 207 NY 66, 68 [1912]).
Nevertheless, “the language of Labor Law § 240 (1) ‘must not be strained’ to accomplish what the Legislature did not intend” (id. at 292, quoting Martinez v City of New York, 93 NY2d 322, 326 [1999]) because “[t]he point ... is to compel contractors and owners to comply with the law, not to penalize them when they have done so” {id. at 286). Owners and contractors, therefore, have “ ‘strict’ or ‘absolute’ liability” only for those statutory violations that proximately cause an employee’s injury (id. at 289; see also Duda v Rouse Constr. Corp., 32 NY2d 405, 410 [1973]). Stated differently, where a plaintiff is the sole proximate cause of his or her injury, there can be no liability under section 240 (1) (see Blake, 1 NY3d at 290). This is because “it is conceptually impossible for a statutory violation (which serves as a proximate cause for a plaintiff’s injury) to occupy the same ground as a plaintiff’s sole proximate cause for the injury” (id.).
Here, as acknowledged by both Judge Read in her dissent {see dissenting op at 447) and Justice Feinman in his dissent at the Appellate Division {see 110 AD3d 630, 634 [1st Dept *437 2013]), there is at least a question of fact regarding whether defendants provided plaintiff with “proper protection” by furnishing (or failing to furnish) him with an adequate safety device (Labor Law § 240 [1]). Moreover, IMS — not plaintiff and the other PAL workers — was charged with the responsibility to ensure that the manhole was covered. Notably, at the time of the accident, the IMS safety representative was sitting in his car a few feet away from the site. Therefore, even assuming that plaintiff disregarded safety instructions by disassembling the enclosure before the manhole was covered (see dissenting op at 446), there is a question of fact regarding whether the absence of the IMS representative, and his failure to ensure that the manhole cover was immediately replaced, contributed to the accident.
In any event, the adequacy of the manhole cover as a safety device is called into question by the testimony of IMS president Joseph Mazzurco. Mazzurco testified that an open manhole must be surrounded by a three-sided guardrail system to comply with safety standards. Although Mazzurco did not testify as an expert witness in this case, he had personal knowledge of the appropriate safety procedures at the site of plaintiffs accident because PAL hired IMS as the site safety contractor. Determining Mazzurco’s credibility is the province of the jury. Moreover, state and federal regulations support Mazzurco’s testimony (see Department of Labor Regulations [12 NYCRR] § 23-1.7 [b] [1] [i] [“(e)very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part”]; 29 CFR 1910.23 [a] [6] [“(w)hile the cover is not in place, the manhole opening shall be constantly attended by someone or shall be protected by removable standard railings”]). Because defendants failed to establish as a matter of law that they provided “proper protection” through adequate safety devices, their motions for summary judgment should be denied (cf. Stolt, 81 NY2d at 920; Zimmer, 65 NY2d at 523-524).
Additionally, other evidence presents an issue of fact regarding whether plaintiff’s conduct was the sole proximate cause of his accident. The record contains conflicting testimony concerning whether the area surrounding the manhole was illuminated at the time of the accident. Specifically, although plaintiff alleged that the lights had been turned off in the containment enclosure, the asbestos handler supervisor for the New York *438 City Transit Authority testified that the lights were on after plaintiff fell into the manhole. This testimony raises a triable issue as to whether plaintiff could or should have observed that the manhole cover was missing when he fell.
My dissenting colleague contends that plaintiff was the sole proximate cause of his injuries because he disobeyed his supervisor’s instructions to cover the manhole before deconstructing the containment enclosure (see dissenting op at 446). While I agree that, as a general rule, a plaintiff is not entitled to summary judgment when he or she “received specific [safety] instructions . . . and chose to disregard those instructions” (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39 [2004]), the facts here do not establish that plaintiff was the sole proximate cause of his injuries as a matter of law. To be sure, a jury could reasonably conclude that the accident would not have occurred if plaintiff had followed his supervisor’s instructions. However, a reasonable jury could also find that defendants’ failure to provide him with “proper protection,” combined with insufficient illumination — preventing plaintiff from discovering that the manhole was uncovered — was a proximate cause of plaintiff’s injuries. If the latter, plaintiff would, at most, be contributorily negligent for disregarding his supervisor’s instructions. As noted above, such contributory negligence is not a defense to a Labor Law § 240 (1) violation (Stolt, 81 NY2d at 920). Thus, it is for the factfinder — not this Court — to resolve the question of proximate cause.
In sum, I conclude that questions of fact exist regarding whether defendants provided plaintiff with “proper protection” and whether plaintiff’s conduct was the sole proximate cause of his injuries. Accordingly, I would modify by reversing the Appellate Division order insofar as it affirmed the grant of summary judgment to defendants, deny summary judgment to plaintiff and defendants, and remit to Supreme Court for further proceedings.

 I, too, assume without deciding that the accident involved an elevation-related risk.